IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| LANCE E. BRIGGS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 08-6037-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL HOLSAPPLE and POLK COUNTY, | ) ) | |
| | ) | |
| Defendants. | ) ) | |

Daniel A. Rayfield
Weatherford, Thompson, Cowgill, Black & Schultz, P.C.
130 W. First Avenue
P. O. Box 667
Albany, Oregon 97321

      Attorney for Plaintiff

David Doyle
Polk County Legal Counsel
850 Main Street
Dallas, Oregon 97338

      Attorney for Defendants

Page 1 - OPINION AND ORDER

KING, Judge:

Plaintiff brings a Fourth Amendment claim and claims for false arrest, unlawful detention, false imprisonment and negligence against defendants Michael Holsapple and Polk County, arising out of an arrest for Driving Under the Influence of Intoxicants ("DUII"). Before the court are the cross-motions for summary judgment filed by plaintiff and defendants.

## BACKGROUND

Polk County Deputy Sheriff Holsapple works for the Polk County Sheriff's Office, although he does not normally work as a traffic enforcement officer.[1]

On September 21, 2007 at 7:20 pm, Deputy Holsapple pulled over plaintiff for driving 74 mph in a 55 mph zone on Highway 22. Plaintiff admitted he had been speeding. Deputy Holsapple smelled alcohol while speaking with plaintiff and asked him if he had been drinking. Plaintiff reported that he "had a couple of beers" and pizza at his brother's house beginning around 5:00 pm. Holsapple Dep. 21:18-22:4. Deputy Holsapple noticed that plaintiff's eyes were watery and bloodshot. He asked plaintiff what kind of beer and what size drinks. Plaintiff reported that he thought he had been drinking Bud Light and that he did not know how large the drinks were.

---

[1] I note that neither party submitted deposition excerpts properly, making it difficult for the Court to review the evidence in this case. First, parties must authenticate deposition excerpts by attaching the cover page of the deposition (thereby identifying the name of the deponent) and the reporter's certification that the deposition is a true record of the testimony of the deponent. Fed. R. Evid. 901(b); Fed. R. Civ. P. 56(e) and 30(f)(1); Orr v. Bank of America, 285 F.3d 764, 774 (9th Cir. 2002). Second, the parties should submit all the relevant pages from one person's deposition together. Here, the parties combined deposition excerpts that related to a particular subject, which meant deposition excerpts from the same deponent were scattered throughout the record. This method of submitting the evidence combined with the parties' failure to include the cover pages of the depositions made it needlessly frustrating to determine the identity of the deponent.

Page 2 - OPINION AND ORDER

Plaintiff agreed to undergo the field sobriety tests, which are also known as the Standardized Field Sobriety Tests ("SFSTs"). Deputy Holsapple administered three such tests: the Horizontal Gaze Nystagmus ("HGN"), the Walk and Turn Test, and the One Leg Stand Test.

Plaintiff performed the tests on an asphalt surface to the right of the white fog line. Deputy Holsapple kicked "a rock or two" out of the way to clear an area for plaintiff. Holsapple Dep. 37:2-10. Plaintiff claims gravel was scattered over the surface and that the surface was on an incline, affecting his performance. When Deputy Holsapple administered the field sobriety tests he reported observing one out of six clues on the HGN Test, which meant plaintiff passed the test. Deputy Holsapple found five out of eight clues with the Walk and Turn Test and two out of four clues with the One Leg Stand Test, which meant plaintiff failed these tests. Deputy Holsapple believes "swaying" is one of the six possible clues for the Walk and Turn Test, but it is not. Swaying is, however, an observation that police officers are told to record. Deputy Holsapple's notes do not exactly conform with his police report. His handwritten notes indicate that plaintiff failed the Walk and Turn Test by four out of eight clues and passed the One Leg Stand by one out of four clues. Deputy Holsapple testified, however, that the marks in his field notes are not indicative of the number of clues observed but merely serve as reminders.

Plaintiff's retained expert, Trace Schreiner, testified that there were eight possible clues for the Walk and Turn Test and that the presence of just two clues is considered an indicator of impairment. The presence of five clues is a "strong indicator of physical impairment." Schreiner Dep. 35:13-22. He also testified that there are four possible clues with the One Leg Stand Test,

and the presence of two clues is considered an indicator of impairment. Plaintiff's performance on the tests together would in fact suggest physical impairment.[2]

Deputy Holsapple testified that plaintiff's speech was good throughout their interaction. Deputy Holsapple did not smell alcohol on plaintiff after plaintiff exited his car. Plaintiff told Deputy Holsapple he had a cold, although the parties dispute whether plaintiff told him at the traffic stop or later at the jail.

After plaintiff had completed the field sobriety tests, Deputy Holsapple asked the plaintiff again how much alcohol he had consumed. Plaintiff responded, "Two beers." Holsapple Dep. 73:11-24. Deputy Holsapple thought plaintiff was not being honest due to plaintiff's performance on the tests.

Plaintiff's expert Schreiner testified that when he was an instructor for the Oregon Police Academy he explained to his students that it is "not uncommon for people to say they've had a couple of beers, a couple of drinks, two beers. As I explained to them, it – they may be lying. A lot of people lie, lie to the police." Schreiner Dep. 25:12-26:4. He agreed that "very often it would prove that they had quite a bit more than two beers." Id. at 25:9-11. This is known as the "two beer defense." Id. at 25:12-15.

Deputy Holsapple placed plaintiff under arrest at 7:33 pm for his appearance and his poor performance on the field sobriety tests.

The last time Deputy Holsapple arrested an individual for DUII was on September 17, 2006, a little less than one year before he arrested plaintiff. Deputy Holsapple did not administer

---

[2]There is some question whether Schreiner meant "physical impairment" to include other causes besides intoxication, such as cold, fatigue, or physical conditions. His testimony is not clear on this point.

Page 4 - OPINION AND ORDER

the field sobriety tests for that arrest. Officers lose proficiency administering the tests if they do not regularly perform them.

Deputy Jenkins arrived at the scene after plaintiff was placed under arrest. He sniffed plaintiff's car and plaintiff himself and did not smell alcohol. Deputy Jenkins thought plaintiff's arrest was not for an alcohol DUII. Plaintiff told Deputy Jenkins he had three beers: he had misplaced his second beer and opened a third beer, but did not finish the third beer.

Deputy Holsapple transferred plaintiff to the Polk County Jail where administration of the Intoxilyzer 8000 breath test was delayed 30 minutes because the plaintiff burped twice. The Polk County Jail administered the breath test at approximately 8:34 pm, with results of 0.000% BAC.

Deputy Holsapple suspected that the 0.000% BAC results would mean plaintiff would not be prosecuted for DUII (alcohol) due to the guilt beyond a reasonable doubt standard. Nevertheless, he remained confident that his actions were supported by probable cause. He cited plaintiff for DUII.

Deputy Holsapple placed plaintiff in a holding cell, completed the Probable Cause Affidavit and gave it to the booking deputy. The Probable Cause Affidavit is later reviewed by a judge to determine whether to release the person or keep them on bail. The booking officer noted on the Medical Condition/Health History Profile that plaintiff did not show evidence of "alcohol influence" or "drug influence." Pls.' Ex. 34. According to defendants, the profile relates only to obvious intoxication and the booking officer completed the form three hours after plaintiff had been arrested.

Deputy Holsapple did not observe any indication of drug use. He read plaintiff the Implied Consent Form to obtain a urine sample from plaintiff. Defendants admit that Deputy

Page 5 - OPINION AND ORDER

Holsapple did not have probable cause or reasonable suspicion to ask for a urine sample from plaintiff.[3] Defendants did not send plaintiff's urine sample to be tested until they received notice of this lawsuit. Plaintiff's urine tested negative for drugs.

Plaintiff was released some time after 10:22 pm.

Justin Lazenby, Forensic Scientist, Oregon State Police Toxicology Unit, has reviewed the facts of plaintiff's arrest and has concluded: (a) the Intoxilyzer 8000 underestimates actual BAC 84% of the time; (b) the Intoxilyzer 8000 will round all breath sample results below 0.010% down to 0.000% ; (c) based on the alcohol consumption described by plaintiff in his deposition, plaintiff's BAC at the time of driving would be between 0.019% and 0.023%, although plaintiff's consumption of pizza would potentially reduce it to 0.000% BAC and certainly put it below either 0.023 or 0.019% BAC; and (d) if plaintiff consumed more than two beers, the amount of alcohol in his system would increase. Additionally, plaintiff asserts that Lazenby formed his conclusions using plaintiff's body weight of 160, as reported on his driver's license. At the time of his booking, plaintiff weighed 210 pounds.

Schreiner concluded that probable cause did not exist for DUII after plaintiff registered a 0.000% BAC and when Deputy Holsapple had no indication of drug use. He agreed, however, that "reasonable trained minds can disagree on this case as to whether there was probable cause." Schreiner Dep. 63:19-64:1.

Defendants' expert witness, Sergeant Tim Plummer with the Oregon State Police gave conflicting testimony about the existence of probable cause after the 0.000% BAC. He testified as follows:

---

[3]Plaintiff is not pursuing this claim.

> Q: Everything took place the same as in the arrest. Mr. Holsapple sees Briggs speeding, pulls him over, conducts the field sobriety tests. There's the admissions of drinking, bloodshot, watery eyes. There is the performance of the field sobriety tests. There is the faint odor of alcohol. Deputy Jenkins arrives on the scene, not confirming the alcohol.
>
> And then after the field sobriety tests, **an hour later**, he takes the – he takes the breathalizer in the back seat of Mr. Holsapple's vehicle. He registers a 0.000. And in that time, Detective Holsapple has absolutely no indication of drug use.
>
> Does he have probable cause to make an arrest for an alcohol DUII?
>
> A: I'd say at that point, given those set of circumstances, no.

Plummer Dep. 110:7-24 (emphasis added).

On the other hand, Plummer also testified, "[U]sing the information I got from the report, had I been there and I'd seen those same things, I would have believed there was probable cause to arrest him." Plummer Dep. 21:21-24.

As a result of defendants' actions, plaintiff has an FBI and Oregon State criminal record which he says cannot be expunged under Oregon law.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

Page 7 - OPINION AND ORDER

## DISCUSSION

I.    <u>Deputy Holsapple had Probable Cause to Arrest Plaintiff for DUII</u>

Defendants move for summary judgment on plaintiff's first claim for relief in which plaintiff alleges that Deputy Holsapple arrested him without probable cause.[4] Accordingly, plaintiff's claim fails if Deputy Holsapple had probable cause to arrest him.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." A warrantless arrest is reasonable under the Fourth Amendment when there is probable cause to believe that a criminal offense has been or is being committed. <u>Devenpeck v. Alford</u>, 543 U.S. 146, 152 (2004). Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest. <u>Id.</u> (citing <u>Maryland v. Pringle</u>, 540 U.S. 366, 371 (2003)). The court must looks to "the totality of the circumstances known to the arresting officer, to determine if a prudent person would have concluded there was a fair probability that the defendant had committed a crime." <u>John v. City of El Monte</u>, 515 F.3d 936, 940 (9th Cir. 2008) (internal brackets omitted). Although evaluating probable cause is a highly fact dependent issue, "whether a reasonable officer could have believed probable cause . . . existed to justify . . . an arrest is 'an essentially legal question' that should be determined by the district court at the earliest possible point in the litigation." <u>Peng v. Mei Chin Penghu</u>, 335 F.3d 970, 979 (9th Cir. 2003). "Thus, where the material, historical facts are not in dispute, and the

---

[4]Plaintiff concedes that Deputy Holsapple had a reasonable suspicion to conduct a traffic stop and that plaintiff consented to take the field sobriety tests.

only disputes involve what inferences properly may be drawn from those historical facts, it is appropriate for this court to decide whether probable cause existed . . . ." Id. at 979-80.

Additionally, "[p]robable cause is an objective standard and the officer's subjective intention in exercising his discretion to arrest is immaterial in judging whether his actions were reasonable for Fourth Amendment purposes." John, 515 F.3d at 940; Devenpeck, 543 U.S. at 153 (cases make clear that arresting officer's state of mind is irrelevant, except for the facts that he knows; question is whether circumstances viewed objectively justify the action). The court makes this determination "based upon the information the officer had at the time of making the arrest." Id. Furthermore, where the information supports a finding of probable cause, the officer will not be liable for an arrest simply because probable cause may have dissipated had the officer conducted further investigation. Id.

> It is unlawful in Oregon to drive
>
> a vehicle while the person: (a) Has 0.08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person . . . ; (b) Is under the influence of intoxicating liquor, a controlled substance or an inhalant; or (c) Is under the influence of any combination of intoxicating liquor, an inhalant and a controlled substance.

ORS 813.010 (1). A person is "under the influence of intoxicating liquor when he or she has consumed enough liquor to adversely affect that person's mental or physical faculties to some noticeable or perceptible degree." Chartrand v. Coos Bay Tavern, Inc., 298 Or. 689, 699-700, 696 P.2d 513 (1985).

The facts known to Deputy Holsapple were as follows: plaintiff was driving 74 mph in a 55 mph zone; plaintiff admitted to speeding; Deputy Holsapple smelled alcohol on plaintiff prior to plaintiff's exiting the car; plaintiff admitted to having a "couple of beers;" plaintiff's eyes were

Page 9 - OPINION AND ORDER

watery and bloodshot; plaintiff could not remember how large the drinks were and could not remember precisely what he had been drinking but thought it was Bud Light; plaintiff consented to the field sobriety tests; plaintiff passed the HGN test and either passed or failed the One Leg Stand (depending on whether Deputy Holsapple's notes or report is correct), but failed the Walk and Turn Test. Plaintiff's retained expert, Schreiner, testified that just two clues for the Walk and Turn Test is indicative of impairment; plaintiff failed either four or five clues (depending on whether Deputy Holsapple's notes or report is correct).

Plaintiff claims gravel was scattered on the surface, that he was required to perform the field sobriety tests on an incline, and that he had a cold. Defendant did not complain about the gravel or incline at the time he took the tests. Additionally, the National Traffic Highway Safety Administration DUII Detection and SFSTs Student Manual notes that "[r]ecent field validation studies have indicated that varying environmental conditions have not affected a suspect's ability to perform" the Walk and Turn Test. Pls.' Ex. 26 at 2.

Plaintiff suggests that Deputy Holsapple was not competent to administer the field sobriety tests. He argues that generally police officers must practice the skills to remain proficient, it had been a year since Deputy Holsapple had administered a field sobriety test, and he incorrectly testified that swaying was one of the clues for the Walk and Turn test. Plaintiff, however, offers no evidence that Deputy Holsapple's observations were inaccurate or that he conducted the Walk and Turn Test incorrectly. Although Holsapple incorrectly identified swaying as a clue for the Walk and Turn Test, plaintiff failed the test by at least four clues when only two would have been sufficient to show impairment; moreover, swaying was not one of the clues Deputy Holsapple observed in plaintiff.

Page 10 - OPINION AND ORDER

Plaintiff also asserts that the fact that Deputy Holsapple requested a urine sample from plaintiff without probable cause or reasonable suspicion of drug use shows Deputy Holsapple's incompetence in undertaking a DUII investigation. Deputy Holsapple, however, gathered the urine sample at the suggestion of the Drug Recognition Expert, not on his own.

Additionally, contrary to plaintiff's contention, the fact that plaintiff passed the HGN Test does not show "conclusively" that plaintiff was not intoxicated. Defendant's expert testified that any determination about the accuracy of any of the tests is dependent on the research study to which one refers, and that the Walk and Turn Test and One Leg Stand Test are 95% reliable.

It is true Deputy Jenkins told Deputy Holsapple he did not smell alcohol, but that was after some time had passed. Additionally, Deputy Holsapple identified other indications of plaintiff's intoxicated state, including his watery and bloodshot eyes, the fact that plaintiff admitted to drinking, and plaintiff's performance on the field sobriety tests.

Plaintiff claims the booking officer's report that plaintiff did not show evidence of "alcohol influence" undermines a finding of probable cause. The booking agent testified, however, that he completed the form nearly three hours after Deputy Holsapple stopped plaintiff and that the form is intended to identify obvious intoxication requiring medical attention.

Based on the undisputed evidence, Deputy Holsapple had probable cause to arrest plaintiff for DUII.

Even if I were to conclude that Deputy Holsapple did not have probable cause to arrest plaintiff, I would find Deputy Holsapple protected by qualified immunity because a reasonable officer could have believed his conduct was lawful. Qualified immunity allows for errors in judgment and protects "all but the plainly incompetent or those who knowingly violate the

law . . . [I]f officers of reasonable competence could disagree on the issue [whether or not a specific action was constitutional], immunity should be recognized." Malley v. Briggs, 475 U.S. 335, 341 (1986).

Faced with the information possessed by Deputy Holsapple, a reasonable officer could have believed he had the probable cause necessary to make a valid warrantless arrest for DUII in light of clearly established law. Even plaintiff's expert agreed that "reasonable trained minds can disagree on this case as to whether there was probable cause." Schreiner Dep. 63:19-64:1.

In summary, defendant is entitled to summary judgment on plaintiff's first claim for relief.

II.     Probable Cause Was Not Vitiated by Later Evidence

Both parties move for summary judgment on plaintiff's second claim for relief: unlawful detention in violation of plaintiff's Fourth Amendment rights. Plaintiff alleges Deputy Holsapple continued to detain him without probable cause even though plaintiff's BAC registered at 0.000%.

As I noted above, it is unlawful in Oregon to drive a vehicle while under the influence of an intoxicating liquor pursuant to ORS 813.010(1).

Here, Deputy Holsapple had probable cause to arrest plaintiff for violating ORS 813.010(1). The 0.000% BAC did not vitiate the underlying predicate for the DUII charge–that plaintiff had been driving while under the influence of intoxicating liquor. In other words, this is not a case where Deputy Holsapple discovered there was no factual basis for the charge. Deputy Holsapple had a particularized and objective basis for suspecting plaintiff was engaged in illegal activity so as to justify his arrest. The law simply requires that Deputy Holsapple believe with a

fair probability that plaintiff's mental or physical faculties were adversely affected by the beer plaintiff admitted to drinking *at the time plaintiff was driving*.

Even if the BAC was relevant evidence of plaintiff's sobriety, it was obtained a little over an hour after Deputy Holsapple pulled plaintiff over. Plaintiff neither disputes nor offers contradictory evidence that the Intoxilyzer 8000 underestimates BAC 84% of the time and rounds all breath sample results below 0.010% down to 0.000%. Additionally, defendants' expert Plummer testified that people "metaboliz[e] out as much as a .03 percent alcohol in an hour" and that "because someone sobers up does not mean at the time that they were driving the vehicle . . . that they were not impaired and it did not constitute DUII." Plummer Dep. 106:11-107:1. Again, the law does not require a certain BAC level before an individual may be arrested; rather, it requires that a person be under the influence of an intoxicant.

Plaintiff's motion for summary judgment is denied and defendant's motion is granted.

III.    Remaining Claims

In his third claim for relief plaintiff alleges a claim for false arrest and in his fourth claim for relief he alleges false imprisonment. In Oregon, false arrest and false imprisonment do not constitute separate tort claims. Hiber v. Creditors Collection Serv., Inc., 154 Or. App. 408, 413, 961 P.2d 898 (1998) (an action for false imprisonment is also called false arrest). Both torts require proof of four elements: "(1) defendant must confine plaintiff; (2) defendant must intend the act that causes the confinement; (3) plaintiff must be aware of the confinement; and (4) the confinement must be unlawful." Id. at 413. The imprisonment was not unlawful if an officer has probable cause to arrest. Based on my conclusion above that Deputy Holsapple had probable cause to arrest plaintiff, these claims must be dismissed.

Finally, in his fifth claim for relief, plaintiff alleges the County was negligent in the following ways: failing to train officers, allowing officers to work traffic enforcement shifts who did not do so routinely, failing to ensure officers maintained competency, and failing to implement a policy of releasing individuals with a 0.000% BAC. Additionally, plaintiff alleges the County was negligent, through Deputy Holsapple's actions, in arresting plaintiff without probable cause, failing to release plaintiff after his 0.000% BAC, issuing plaintiff a citation, failing to comply with field sobriety test guidelines, failing to utilize training, failing to maintain competency, and failing to efficiently perform duties.

"[U]nless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." Fazzolari v. Portland Sch. Dist. No. 1J, 303 Or. 1, 17, 734 P.2d 1326 (1987). This claim fails because I have concluded Deputy Holsapple acted reasonably when he arrested plaintiff with probable cause.

## CONCLUSION

Based on the foregoing reasons, Plaintiff's Motion for Summary Judgment (# 20) is denied and Defendants' Motion for Summary Judgment (# 23) is granted. This case is dismissed.

IT IS SO ORDERED.

Dated this _____11th_____ day of February, 2009.

                                          /s/ Garr M. King
                                          Garr M. King
                                          United States District Judge